IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 02-40004-WDS |
| | ) | |
| DANIEL W. ROSS, a/k/a "Chino," | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

This matter is before the Court on limited remand from the United States Court of Appeals for the Seventh Circuit pursuant to *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir. 2005) to determine whether this Court would impose defendant's original sentence had the Sentencing Guidelines been merely advisory, *see, United States v. Ross*, No. 04-2584 (7th Cir. 2005). In accordance with *Paladino*, this Court ordered the parties to submit their respective positions on the question whether, in light of the decision of the Supreme Court in *United States v. Booker*, 125 S. Ct. 783 (2005), the defendant's sentence was proper. The court in *Paladino* advised: "Upon reaching its decision (with or without a hearing) whether to resentence, the District Court should either place on the record a decision not to resentence with an appropriate explanation" or advise the Seventh Circuit of the Court's desire to resentence the defendant. *Id.*

The Court has considered the entire record, including the briefs filed by counsel; the statutory factors of 18 U.S.C. § 3553(a); the Presentence Investigation Report; the now advisory sentencing guidelines; and the reasons for the original sentence imposed in this case. Upon review of the record, the Court finds that a hearing is not necessary in this case and advises the Court of Appeals that it

would impose the same sentence had the guidelines been merely advisory.

## FACTUAL BACKGROUND AND COURT'S FINDINGS AT SENTENCING

The defendant, Daniel Ross, a/k/a "Chino," was charged by the grand jury in a Third Superseding Indictment with cocaine base related offenses. Specifically, Count 1, charged that from on or about December 2001, to on or about February 5, 2002, the defendant, and Mario L. Gordon, a/k/a "Rio," conspired together and with others known and unknown to the grand jury to knowingly and intentionally distribute and possess with intent to distribute 5 grams or more of a mixture and substance containing cocaine base, "crack cocaine," a Schedule II Narcotic Controlled Substance, all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii), and all in violation of 21 U.S.C. § 846.

Count 3 charged that on or about February 4, 2002, the defendant, Daniel Ross, a/k/a "Chino," knowingly and intentionally possessed with intent to distribute a mixture and substance containing cocaine base, "crack cocaine," a Schedule II Narcotic Controlled Substance, all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). The defendant was found guilty on February 9, 2004, on both counts after a three day jury trial.  The jury returned a special verdict on Count 1 of the Third Superseding Indictment  finding that the amount of crack cocaine proved by the government exceeded five grams.

At disposition, the Court found, by a preponderance of the evidence, that the defendant was responsible for more than 1.5 kilograms of crack cocaine (Disp. 5/6/2004 at 11-12).  The Court further found from reliable testimony that the defendant was engaged in extensive drug activity both in the Chicago area and in transporting drugs down to Carbondale, Illinois.  At the time of his arrest, the defendant had in excess of 100 grams of cocaine which he was bringing down to be distributed in the Carbondale area.  The defendant in his statements made after his arrest to Special Agent O'Reilly,

acknowledged that he had obtained five kilograms of crack cocaine from a supplier known as "Little Greg" in January of 2002; that he had purchased 1.5 ounces from DeAndre Brown; that he had several dealings with Mark Trussell, cooking 30 ounces on several occasions when he was with Trussell; that he would cook 20-30 ounces a week for Trussell; that he supplied 12 ounces of crack cocaine to Maurice Harper; that he sold Jonathon Brown an ounce of crack; and had also sold "D.D." an ounce of crack cocaine. (*Id.* at 8-9).   In addition, the Court found that Jimmy Nelson testified that he had purchased quarter-ounce amounts from the defendant on four or five occasions at the Sunset Motel; that Brenda Greer bought several times from the defendant for a total of 0.4 grams; that Belinda Ross testified that she purchased crack from the defendant on several occasions totalling 1.2 grams; that George Higgins bought 0.2 grams from the defendant; that Sonya Frazier testified she bought approximately 0.6 grams; that Odell Frazier bought three to four times per week from the defendant, which, for two weeks would amount to 0.6 grams; that Pulaski Graham testified that he purchased crack daily from the defendant, for a conservative amount of 1.1 grams;  and that Johathon Brown testified that he purchased five ounces from the defendant for 141.75 grams. (*Id.* at 12.) The Court found that all of these amounts were within the criminal scope of the charged conspiracy. (*Id.* at  9, 12)

      The Court enhanced the offense level by 2 points for possession of a gun, based on the evidence at trial that the defendant possessed a gun during his drug transactions; that Sonya Frazier testified that she would see the defendant with a gun when she purchased from him at "Keshia's" apartment; that Nelson testified that he saw the defendant with a .38 caliber weapon whenever the defendant was cutting up his crack or making a crack deal; additionally, there was information received from co-defendant Gordon that Ross carried a weapon. (*Id.* at 21).

      The Court found the defendant's appropriate offense level to be a 40 with a criminal history

category of III, with a sentencing range of 360-480 months as to Count 1 and 240 months as to Count 3, and a fine range of $25,000 to 3 Million dollars.

The defendant presented argument on the defendant's background which the Court considered in mitigation.  Although the defendant had a lengthy juvenile record, most of it occurred when he was 12-14 years old; that he lacked a father figure, and the defendant had a drug abuse problem which started when he was the age of 12.  The aggravating factors considered by the Court were the defendant's extensive criminal history, which began at age 12 and continued through his incarceration on the charged offenses, at the age of 19.  The Court also considered the large amounts of drugs involved in this conspiracy; the range of the conspiracy, including transporting drugs from Chicago to Carbondale; and the fact that the defendant regularly carried firearms as part of his drug dealings.

Based on these findings, the Court sentenced the defendant to a term at the low end of the guideline range under the sentencing guidelines, which the Court found to be sufficient to punish the defendant for the crime he committed as well as to act as a deterrent to others.  The sentence imposed was 360 months on Count 1, and a term of 240 months on Count 2, said terms to run concurrently; a term of supervised release of five years on Count 1 and a term of 3 years on Count 2, terms to run concurrently; special assessments of $100 on each of Counts 1 and 2 and, in addition, the Court departed downward on the minimum fine range and imposed a fine of $500 on the defendant.

### Sentencing Considerations under 18 U.S.C. §3553(a)

The language of 18 U.S.C. § 3553(a) provides several factors which are to be considered when imposing a sentence.   The guidance given in the statutory language is that "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute.   As set forth in the statute, the sentencing court is to consider: a) The nature and circum-

stances of the offense and the history and characteristics of the defendant § 3553(a)(1); b) and the sentence should: reflect the seriousness of the offense, § 3553(a)(2)(A); promote the respect for law, § 3553(a)(2)(A); provide just punishment for the offense, § 3553(a)(2)(A); afford adequate deterrence to criminal conduct, § 3553(a)(2)(B); protect the public from further crimes of the defendant,§ 3553(a)(2)(C); and, provide the defendant with the needed educational or vocational training, medical care or other correctional treatment in the most effective manor, § 3553(a)(2)(D).

The Seventh Circuit has made it clear that post *Booker,* sentencing determinations should be made on a preponderance of the evidence standard. "The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guidelines system has some flexibility in application." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir.2005). Therefore, to the extent that the defendant raises a challenge based on the preponderance of the evidence findings by the Court of the defendant's offense level and criminal history category, the Court rejects those challenges.

In *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir.2005), the Seventh Circuit held that "any sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness."   At sentencing, this Court gave consideration to the then-in-effect Sentencing Guidelines, the defendant's criminal history, the evidence adduced at trial, including evidence of the amounts of crack cocaine involved in this conspiracy, and the jury's finding that the government had proved that the amount of crack cocaine which the defendant was responsible for was in excess of five grams, and evidence that the defendant possessed a firearm. The Court has considered the sentencing factors set out in 18 U.S.C. § 3553(a), and has reviewed the mitigating

5

evidence and aggravating evidence presented at the time of sentencing.  In light of this review, the Court determines that if this matter were remanded for re-sentencing, the Court would impose the same sentence on the defendant.

As previously noted, at the sentencing hearing the Court determined the conspiracy had conservatively involved more than 1.5 kilograms of crack cocaine, and that defendant possessed a firearm during the commission of the charged offenses. The sentence of 360 months was at the low end of the guideline range and reflects the seriousness of defendant's offense, promotes respect for the law, and protects the public from further crimes of this defendant.  *See* 18 U.S.C. § 3553(a)(2). The Court has fully considered the nature of this offense, and defendant's personal history and characteristics, and all mitigating evidence in the record. *See id.* at § 3553(a)(1).

For the reasons listed above, the Court **FINDS** that the defendant has not overcome the rebuttable presumption that his sentence is reasonable. *See Mykytiuk*, 415 F.3d at 608 ("This is a deferential standard . . .  The defendant can rebut this presumption only by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a).").

**IT IS SO ORDERED.**

**DATED: May 1, 2006.**

s/ WILLIAM D. STIEHL
**DISTRICT JUDGE**
